

FILED
SEP 10 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET VOHARIWATT and<br>PAUL VOHARIWATT,<br><br>                        Appellants,<br>v.<br><br>KEITH MATSON and<br>JOANNE MATSON,<br><br>                        Appellees. | Case No.: 3:18-cv-02168-BEN-BGS<br>Bankruptcy No.: 16-00658-LA7<br><br>**ORDER** |

    Appellants Janet and Paul Vohariwatt appeal the Bankruptcy Court's September 4, 2018 Judgment on Remand. The Judgment is **AFFIRMED**.

## I.    BACKGROUND

**A. The Foreclosure**

    In 2006, Appellants Janet and Paul Vohariwatt purchased real estate located at 31 Sandpiper Strand. In December 2008, the Vohariwatts contracted to rent the property to tenants. The tenants paid $60,000 to rent the property for one year, as well as a $10,000 "pet deposit" and a $5,000 security deposit. The tenants began living at the property in May 2009. In January 2010, the Vohariwatts and the tenants agreed to extend the lease until June 20, 2011 for another $60,000. The tenants made a $50,000 rent payment in May

2010, and the parties agreed that the pet deposit would be used to cover the remaining $10,000 of rent owed.

Notices of Default for the Property were recorded in August 2009 and July 2010, and Notices of Trustee's Sale for the Property were recorded in November 2009 and October 2010. On February 3, 2011, Keith and Joanne Matson purchased the 31 Sandpiper Strand property at a foreclosure auction. The Vohariwatts did not learn of the foreclosure auction until February 4, 2011. Between February 4, 2011 and February 23, 2011, the Matsons requested that the Vohariwatts turn over the rent money prepaid by the tenants for the period of February 3, 2011 (the day the Matsons took ownership of the property) through June 20, 2011 (the end of the rental period). The Vohariwatts refused.

**B. State Court Proceedings**

On March 30, 2011, the Vohariwatts brought suit for wrongful foreclosure against the Matsons in the Superior Court, County of San Diego. On October 7, 2011, the Superior Court dismissed the Vohariwatts' wrongful foreclosure suit. On that day, the Matsons again requested that the Vohariwatts turn over the prepaid rent, and the Vohariwatts again refused.

The Matsons then brought suit against the Vohariwatts in the Superior Court, County of San Diego for (1) wrongful institution of civil proceedings for their wrongful foreclosure suit against the Matsons and (2) for conversion of the prepaid rent. After a two-day trial in January 2013, the Superior Court found for the Matsons on both claims, entering judgment against the Vohariwatts for $23,587.55 on the wrongful institution of civil proceedings claim and for $22,520.55 on the conversion claim. In finding for the Matsons on the conversion claim, the Superior Court stated:

> The Vohariwatts kept the rent money attributable to February 3, 2011 to June 20, 2011 despite no longer owning [the property]. The conversion occurred on February 3, 2011. Mr. Matson and Mrs. Vohariwatt both testified that Mr. Matson requested the prepaid rent money on October 7, 2011. The Vohariwatts refused to give them the money.

> At the rental rate of $5,000 per month multiplied by twelve months, and then divided by 365 days, the daily rental rate is $164.38. February 3, 2011 to June 20, 2011 was 137 days. Therefore, the amount of the Matsons' personal property that the Vohariwatts converted is $22,520.55.

Doc. 6-9 at p. 29 (2/5/2013 Superior Court Judgment).

**C. First Bankruptcy Proceeding**

In February 2016, the Vohariwatts filed for Chapter 7 bankruptcy. On April 28, 2016, the Matsons filed a complaint in the Bankruptcy Court seeking a determination that the two debts owed under the Superior Court's judgment against the Vohariwatts were nondischargeable under 11 U.S.C. § 523(a)(6). On January 24, 2017, the Matsons moved for a summary judgment order declaring that the judgment debts were exempt from the Vohariwatts' discharge. The Bankruptcy Court granted the Matsons' motion as to the debt owed for wrongful institution of civil proceedings. However, the Bankruptcy Court denied the Matsons' motion as to the debt owed for the conversion judgment, finding that particular debt to be dischargeable because it did not satisfy § 523(a)(6). In so holding, the Bankruptcy Court reasoned that the Matsons were collaterally estopped from arguing § 523(a)(6)'s nondischargeability exception applied because of the Superior Court's judgment that the conversion occurred on February 3, 2011. Specifically, the Bankruptcy Court determined that because the Superior Court found the conversion occurred on February 3, 2011, and the Vohariwatts did not learn about the foreclosure sale until after February 3, 2011, their conversion on February 3, 2011 could not be "willful and malicious," as required by § 523(a)(6)'s nondischargeability exception.

**D. First Appeal of Bankruptcy Judgment**

On June 19, 2017, the Matsons appealed to this Court the parts of the Bankruptcy Court's judgment declaring that the judgment debt attributable to conversion was discharged and ordering that the interest would accrue at the federal judgment rate. On appeal, this Court held that "the Bankruptcy Court erred when it applied the doctrine of collateral estoppel to conclude that the Conversion did not include acts that occurred after February 3, 2011" because "[t]he Superior Court had no reason to decide whether or not

the Conversion included events that occurred after that date." 12/18/17 Order at p. 6. As relevant to the instant appeal, this Court further held:

> In this case, principles of collateral estoppel require this Court to accept the Superior Court's conclusion that the Conversion had begun to occur by February 3, 2011 . . . The Vohariwatts[1] have yet to transfer the Prepaid Rent to the Matsons. Consequently, the Conversion has continued from February 3, 2011 until the present. The Conversion includes "any act[s] of dominion" over the Prepaid Rent committed by the Vohariwatts during that period of time. *Igauye v. Howard*, 249 P.2d 558, 561 (Cal. Ct. App. 1952).
>
> The Court remands this case to the Bankruptcy Court to determine whether the Vohariwatts committed acts of dominion over the Prepaid Rent after February 3, 2011. Having determined the acts that make up the Conversion, the Bankruptcy Court must determine whether the Conversion Debt is "for willful and malicious injury by the [Vohariwatts] to [the Matsons]" and therefore [non]dischargeable under 11 U.S.C. § 523(a)(6).

12/18/17 Order at p. 7.

**E. Bankruptcy Proceedings Following Remand**

On remand, the Bankruptcy Court held a hearing during which it asked, "[W]ith respect to additional hearings to understand whether there's a commission of acts of dominion after February 3, 2011, and if there is a conversion, that conversion was willful and malicious, what are you anticipating you might have to do?" Doc. 149 at p. 4. Both parties stated their wish to brief the issues, and the Court set a briefing schedule. *See id.* The Court additionally requested a full transcript of the Superior Court trial, which the parties agreed to provide, and noted, "We will determine whether or not, after the conclusion of the briefing – that the Court is satisfied that no further evidence is required." *Id.* at p. 10.

When the Vohariwatts filed their opposition brief on remand, they attached a declaration with more than 100 pages of new exhibits showing "improvements" they made

---

[1] The Court has modified the quoted language from the 12/18/17 Order to reflect the correct spelling of the Vohariwatts' name.

4

to the property prior to the February 3, 2011 foreclosure. At the August 23, 2018 hearing on remand, the Bankruptcy Court issued a "tentative ruling . . . sustain[ing] the Matsons' evidence objection to strike the Vohariwatts' post-trial evidence as untimely and irrelevant and took under submission to explain in writing the basis for her decision on remand that (1) the Vohariwatts' conversion of the prepaid rent began on February 3, 2011 and has continued until the present; and (2) the resulting conversion debt is for a 'willful and malicious injury' that is nondischargeable under 11 U.S.C. § 523(a)(6)." Doc. 9-1 at p. 81; *see also* Doc. 9-1 at p. 78 ("Tentative Ruling"). The Bankruptcy Court later issued a five-page written order reaffirming its tentative ruling. Doc. 9-1 at p. 81. This appeal followed.

## II. DISCUSSION

The Vohariwatts raise two issues on appeal. First, they argue that the Bankruptcy Court erred by using the "substantial certainty" standard for "willful injury" adopted by *In re Jercich*, 238 F.3d 1202 (9th Cir. 2002). Second, they contend that even if the Bankruptcy Court applied the correct standard, it did not apply it correctly, including because it improperly struck the Vohariwatts' pre-foreclosure improvements evidence. For the reasons discussed below, the Court rejects both grounds for appeal and affirms the Bankruptcy Court's judgment.

### A. The Bankruptcy Court Properly Followed *Jercich* and *Geiger*

Section 523(a)(6) prevents the discharge of any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" § 523(a)(6). The Vohariwatts contend that the Bankruptcy Court applied the wrong standard for § 523(a)(6)'s "willful" injury requirement because it relied upon the Ninth Circuit's decision in *Jercich*.[2] According to the Vohariwatts, *Jercich* "misconstrued (and then overlooked)" the Supreme Court's prior decision in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), by applying a "substantial certainty" test for willfulness. Doc. 8 at p. 19.

---

[2] The Vohariwatts do not appeal the Bankruptcy Court's "malicious" injury finding, and thus, the Court addresses only the "willful" injury prong of § 523(a)(6).

5

The Court reviews *de novo* the Bankruptcy Court's construction of § 523(a)(6). *See In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002) (stating that a conclusion of law is reviewed *de novo*). In its 2018 decision, the Bankruptcy Appellate Panel ("BAP") considered and rejected the same arguments raised by the Vohariwatts. *See In re Hamilton*, 584 B.R. 310 (9th Cir. BAP 2019), *pending appeal*, 2019 WL 1259164 (9th Cir. Apr. 19, 2019). As the BAP recently explained, "[*Geiger* and *Jerich*] are *not* at odds" with one another.[3] *Id.* at 318 (emphasis added). In *Geiger*, the Supreme Court considered whether a debtor-doctor's debt arising from a medical malpractice claim against him fell within the "willful and malicious injury" exception to discharge. The Supreme Court expressly declined to expand the definition of "willful" to include the debtor's negligent or reckless medical care, explaining:

> The word "willful" in § 523(a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional **injury**, not merely a deliberate or intentional **act** that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."

*Id.* at 61 (emphasis in original).

Three years after *Geiger*, the Ninth Circuit decided *Jercich* and declined to find that, under *Geiger*, the willfulness prong necessarily requires a "specific intent" to cause injury. *Jercich*, 238 F.3d at 1207. In so holding, the *Jercich* court reasoned that *Geiger* "clarified that it is insufficient under § 523(a)(6) to show that the debtor **acted** willfully and that the injury was negligently or recklessly inflicted; instead, it must be shown not only that the debtor **acted** willfully, but also that the debtor inflicted the **injury** willfully and maliciously rather than recklessly or negligently." *Id.* (emphasis in original). *Jercich* concluded that *Geiger* did not, however, "answer . . . the precise state of mind required to satisfy § 523(a)(6)'s 'willful' standard." *Id.* The Ninth Circuit went on to follow the Fifth and Sixth

---

[3] This Court's reasoning follows the BAP's reasoning in *Hamilton*, 584 B.R. at 318-320.

6

Circuits in holding that, "under *Geiger*, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that the injury was substantially certain to occur as a result of his conduct." *Id.* Thus, as the BAP confirmed, *Jercich* remains good law that this Court must follow. *See Hamilton*, 583 B.R. at 320 (rejecting arguments identical to those raised by the Vohariwatts).

The Vohariwatts' reliance on *Hawkins v. Franchise Tax Board of California*, 769 F.3d 662 (9th Cir. 2014), to show that willfulness requires "specific intent" fares no better. *Hawkins* is distinguishable because it concerned only tax debts under § 523(a)(1)(A) within "the bankruptcy tax context," not a conversion judgment within the context of a willful and malicious injury under § 523(a)(6), as is the case here. *See also Hamilton*, 584 B.R. at 320 (rejecting debtors' reliance upon *Hawkins* on same grounds). Thus, contrary to the Vohariwatts' argument, *Hawkins* did not "implicitly overrule *Jercich*." *Id.*

Having rejected the Vohariwatts' arguments and construed the test for willfulness under § 523(a)(6), the Court considers next whether the Bankruptcy Court applied the correct standard for willfulness. It did. The Bankruptcy Court properly grounded its construction of the willfulness standard in *Geiger*, *Jercich*, and *In re Su*, 290 F.3d 1140 (9th Cir. 2002), by using the "substantial certainty" standard adopted in *Jercich*. *See* Doc. 9-1 at p. 82-83. Accordingly, the Bankruptcy Court did not err in its construction of § 523(a)(6).

**B. The Bankruptcy Court Correctly Applied the Willfulness Standard**

Next, the Vohariwatts contend that even if *Jercich* is good law, the Bankruptcy Court incorrectly applied its "substantial certainty" standard to the facts of this case by finding § 523(a)(6)'s willful injury requirement was satisfied. To make that determination, the Bankruptcy Court necessarily made factual findings about the Vohariwatts' mental state. Thus, the Court reviews those factual findings for clear error. *See Hamilton*, 584 B.R. at 318 ("The clear error standard applies to the bankruptcy court's factual findings about the

7

Debtors' mental state."). The Bankruptcy Court made the following findings on willfulness:

> The Vohariwatts acted with a willful intent when they took the injury-producing action of asking the tenants to remain in possession without paying any rent to the Matsons, while simultaneously retaining the prepaid rent instead of transferring it to the Matsons. The necessary consequence of this action is that the Matsons could not re-rent the property, or possess the property for themselves, or receive the rental income from the property to pay their mortgage and other debts.
>
> Additionally, the Vohariwatts' willful intent is evidenced by their retention of the prepaid rent after the state court dismissed their foreclosure action against the Matsons, and after the Matsons demanded payment of the rent in October 2011. It is further evidenced by the Vohariwatts' continued retention of the prepaid rent after the Matsons filed the state court action against them for malicious prosecution and conversion of the prepaid rent, and after the Matsons had obtained a judgment against them on both claims. The natural consequence of the Vohariwatts' continued retention of prepaid rent is to deprive the Matsons of their use of these rental monies in violation of their clear ownership rights.

Doc. 9-1 at p. 83.

As previously discussed, the willful injury requirement is met when the debtor knows that the injury is substantially certain to occur as a result of his conduct. *See Jercich*, 238 F.3d at 1208. The court may infer intent "from the totality of the circumstances and the conduct of the person accused." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). In addition, the "court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Su*, 290 F.3d at 1146, n. 6. "The [d]ebtor is charged with the knowledge of the natural consequences of his actions," *Ormsby*, 591 F.3d at 1206, and the court is not required to "take the debtor's word for his state of mind," *Su*, 390 F.3d at 1146, n. 6.

The Vohariwatts argue that the Bankruptcy Court improperly assumed the conversion judgment was nondischargeable without identifying and considering the

requisite "nexus" between their conduct and the end result. That argument lacks merit. The Bankruptcy Court did not base its finding of intent merely on the Vohariwatts' retention of the prepaid rent, as the Vohariwatts contend. Rather, the Bankruptcy Court relied upon the Vohariwatts' undisputed acts of interference with the property's tenants. As the Bankruptcy Court found, the post-February 3, 2011 "injury-producing" conduct was the Vohariwatts' "asking the renters to remain in possession without paying any rent to the Matsons, while simultaneously retaining the prepaid rent instead of transferring it to the Matsons." Doc. 9-1 at p. 83. The Bankruptcy Court further found that the Vohariwatts knew their actions would cause substantial injury to the Matsons because "[t]he necessary consequence of this action is that the Matsons could not re-rent the property, or possess the property for themselves, or receive the rental income from the property to pay their mortgage and other debts." *Id.* Thus, in contrast to the Vohariwatts' characterization, the Bankruptcy Court's decision was not based on the existence of the conversion judgment, alone. Instead, the record reflects that the Bankruptcy Court properly considered the parties' arguments and the evidence offered at trial to come to its conclusions regarding the Vohariwatts' knowledge and intent—conclusions that are logical, plausible, and supported by the record.

Next, the Vohariwatts contend that because they used the prepaid rent funds to pay for "improvements" to the property prior to the foreclosure sale on February 3, 2011, the Matsons "actually had ownership of all the funds received from the prepaid rents" that they were owed pursuant to the Superior Court's conversion judgment. Doc. 8 at p. 22; *see also* Doc. 9-3 (7/11/2018 Declaration and attached exhibits). Thus, the Vohariwatts theorize, the Bankruptcy Court erred by "conclud[ing] that the Vohariwatts knew the natural consequences of continued retention of prepaid rent [wa]s to deprive the Matsons of their use'" because the Matsons were not, in fact, injured. Doc. 8 at p. 22 (citing Doc. 9-1 at p. 83.). The Vohariwatts are incorrect. The Vohariwatts' late-filed evidence of *pre-foreclosure* improvements to the property, accompanied by their new theory that the Matsons were somehow reimbursed for the prepaid rent by purchasing the property with

9

3:18-cv-02168-BEN-BGS
Bankruptcy No.: 16-00658-LA7

the pre-foreclosure improvements, is not only illogical, but it contradicts issues already resolved by the Superior Court, which in turn, the Bankruptcy Court and this Court were required to accept. *See* 12/17/18 Order ("Under California law, collateral estoppel . . . applies to issues that 'have been necessarily decided in the former proceeding.'"). In the first appeal, this Court held that collateral estoppel applied to three issues necessarily resolved by the Superior Court: "(1) whether the Matsons had a right to the Prepaid Rent 'at the time of the conversion,' (2) whether the Vohariwatts converted the Prepaid Rent 'by a wrongful act,' and (3) the amount of damages owed to the Matsons." 12/18/17 Order at p. 6. Accordingly, the Vohariwatts are collaterally estopped from using their late-filed evidence to challenge either the extent of the Matsons' financial damage or whether the Vohariwatts converted the prepaid rent on February 3, 2011.

Nonetheless, the Vohariwatts contend that the Bankruptcy Court erred by striking their pre-foreclosure improvements evidence.[4] That decision, however, was not an abuse of discretion. The Court has reviewed the Vohariwatts' declaration and exhibits and agrees with the Bankruptcy Court that the evidence was both untimely and not relevant to the willfulness finding, for the reasons discussed *supra*.

---

[4] The Court is likewise not persuaded that the Bankruptcy Court's evidentiary ruling denied due process to the Vohariwatts. First, the Vohariwatts offer no evidence in the record showing that they did not have an opportunity to respond, particularly when the Bankruptcy Court held a hearing on August 23, 2018 to address the parties' briefing. The Court notes that the Vohariwatts neglected to file the transcript of that hearing as part of their appeal, and thus, the Court is unable to consider it. In light of the tentative ruling issued by the Bankruptcy Court during that hearing, the Court is skeptical that the evidentiary issue was not at least raised during the hearing. Moreover, there is no evidence in the record suggesting the Vohariwatts took any further steps to be heard on the matter, *e.g.*, by filing a motion to reconsider or for leave to file a sur-reply to the Matsons' reply brief.

Further, even if the Bankruptcy Court had considered the pre-foreclosure improvements evidence—which it may have[5]—the outcome would be the same. First, the Vohariwatts' declaration does not assert their subjective belief that the Matsons were already reimbursed by virtue of purchasing the foreclosed property with the pre-foreclosure improvements. Indeed, there is no direct evidence of the Vohariwatts' beliefs on that point; rather, their alleged belief is evidenced only by implication. *See* Doc. 9-3 (7/11/2018 Declaration).

Second, even considering the Vohariwatts' new theory within the "totality of the circumstances," a court is not required to accept it as true, particularly in the face of evidence to the contrary. *See, e.g.,* Ex. 29; App. 133 (2012 email from the Vohariwatts to third party stating, "I do not think they have the right [to the prepaid rent] . . . 1. Because we have not dropped the wrongful foreclosure case. 2. These are money we used to pay the mortgage and reinstate the loan."); *see also Su*, 390 F.3d at 1146, n. 6 (noting that the court is not required to "take the debtor's word for his state of mind."). For example, during direct examination at trial, counsel asked, "What did you do with the rent and the security deposit you received," and the Vohariwatts responded, "We use[d] it to pay mortgage." Tr. P. 89:26-28; App. 460. Thus, even considering the pre-foreclosure improvements evidence, the Bankruptcy Court's finding that the Vohariwatts interfered with the Matsons' rental income, as well as refused to reimburse them, would still be logical, plausible, and supported by the record. *See In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) ("A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record.").

---

[5] *See* Doc. 9-1 at p. 84 ("Even if the Vohariwatts had already spent these funds prior to February 3, 2011 as they claim, they still had sufficient funds at various times after February 3, 2011 to pay this debt but chose to direct their funds elsewhere.").

11

3:18-cv-02168-BEN-BGS
Bankruptcy No.: 16-00658-LA7

For the previous reasons, the Bankruptcy Court properly construed "willfulness" under § 523(a)(6), properly applied *Jercich*'s substantial certainty standard to the facts, and did not abuse its discretion by striking the pre-foreclosure improvements evidence.

### III. CONCLUSION

The Bankruptcy Court's Judgment dated September 4, 2018 is **AFFIRMED**, and the appeal is dismissed.

**IT IS SO ORDERED.**

DATED: September 9, 2019

HON. ROGER T. BENITEZ
United States District Judge